Jon HEROD, Plaintiff–Appellee
and Cross–Appellant,

v.

COLORADO FARM BUREAU MUTUAL
INSURANCE COMPANY, Defendant–
Appellant and Cross–Appellee.

No. 95CA1221.

Colorado Court of Appeals,
Div. V.

Oct. 24, 1996.

on the appeal but reverse and remand on the cross-appeal.

CFB issued a property insurance policy on a house owned by Herod. After two women dismantled the house to such an extent that it was later condemned and demolished, Herod filed a claim for benefits under the policy. CFB denied the claim on the basis that the damage was not "vandalism or malicious mischief" and, therefore, not covered by the policy.

Herod brought suit alleging breach of contract, bad faith breach of insurance contract, and violation of § 10–3–1101, C.R.S. (1994 Repl.Vol. 4A), which provides for the regulation of insurance companies. The trial court dismissed the breach of contract claim as time barred and dismissed the § 10–3–1101 claim finding that a private action could not be brought thereunder.

A jury trial proceeded on the bad faith breach of insurance contract claim. The jury found for Herod and awarded him $17,000 in economic damages, $6,000 for emotional distress, and $20,000 as exemplary damages.

## I. Bad Faith Denial of Insurance Benefits

CFB first contends that the trial court erred in denying its motion for a directed verdict on Herod's claim for bad faith denial of insurance benefits. The trial court found that reasonable persons could have differed at the close of Herod's case whether the damage was caused by "vandalism or malicious mischief," and thus it rejected CFB's argument that Herod had not produced sufficient evidence to establish the lack of any arguable basis for CFB's denial of his claim. We agree with the trial court's ruling.

In first-party or direct coverage bad faith cases in which the insured brings an action against the insurer, the insurer's denial of a valid claim will constitute bad faith if the insurer's conduct is unreasonable and it knows that the conduct is unreasonable or recklessly disregards the fact that the conduct is unreasonable. *Travelers Insurance Co. v. Savio,* 706 P.2d 1258 (Colo.1985). To recover in such cases, the plaintiff must prove the absence of a reasonable basis for

Johnroe & Claassen, P.C., Drew Johnroe, Steamboat Springs, for Plaintiff–Appellee and Cross–Appellant.

Slater & Associates, P.C., Terry D. Slater, David C. Graham, Grand Junction, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge TAUBMAN.

Defendant, Colorado Farm Bureau Mutual Insurance Company (CFB), appeals from a judgment entered upon a jury verdict finding that it acted in bad faith when it denied an insurance claim submitted by its insured, plaintiff Jon Herod. Herod cross-appeals the denial of prejudgment interest on his non-exemplary damage awards. We affirm

denial of policy benefits and knowledge or reckless disregard of the absence of a reasonable basis for such denial. *Pierce v. Capitol Life Insurance Co.*, 806 P.2d 388 (Colo. App.1990).

A motion for a directed verdict should not be granted unless the evidence compels the conclusion that reasonable jurors could not disagree and that no evidence or inference has been received at trial upon which a verdict against the moving party could be sustained. *Mile Hi Concrete, Inc. v. Matz*, 842 P.2d 198 (Colo.1992).

CFB admits that "it is absolutely clear that in this case there was a dispute" whether Herod had given permission to the two women to dismantle his house. It nonetheless asserts that when a good faith dispute exists as to a policy's coverage, a first-party bad faith claim should not go to the jury because the insurer has a legal right to challenge debatable claims, and it cannot be bad faith as a matter of law to do so. In other words, it argues that in order for an insured to survive an insurer's motion for directed verdict in a first-party bad faith claim, the insured must present sufficient evidence to establish the lack of any arguable reason for denying the claim such that it would be entitled to a directed verdict. We are not persuaded.

■ In *Brewer v. American & Foreign Insurance Co.*, 837 P.2d 236, 238 (Colo.App. 1992), a division of this court rejected an insurer's similar contention that there cannot be a bad faith claim if there is any colorable evidence supporting the denial of an insurance claim, stating:

> We reject defendant's assertion ... that, since plaintiff could not, as a matter of law, have properly been awarded a directed verdict on the underlying [claim], his bad faith claim must, as a matter of law, be denied. We conclude such an interpretation of the burden to assert a bad faith claim is contrary to Colorado law.

We agree with this analysis and, therefore, follow *Brewer*.

Here, Herod produced expert testimony that CFB's conduct was unreasonable and violated several provisions of § 10–3–1104(1),

C.R.S. (1994 Repl.Vol. 4A), which provide for the regulation of insurance companies. The expert testified that CFB's unreasonable conduct included: misrepresentation of its policy provisions; failure to acknowledge and act reasonably promptly upon communications regarding Herod's claims; failure to adopt and implement reasonable standards for the prompt investigation of claims; refusal to pay claims without conducting a reasonable investigation based upon all available information; failure to affirm or deny coverage of claims within a reasonable time after proof of loss statements were completed; and failure to attempt in good faith to effectuate prompt, fair, and equitable settlement of claims in which liability had become reasonably clear.

Thus, we reject CFB's interpretation of the evidentiary burden of an insured and hold that the trial court did not err in finding that Herod had presented sufficient evidence to withstand CFB's motion for directed verdict.

## II. Jury Instructions on Vandalism and Malicious Mischief

■ CFB contends the trial court erred in giving erroneous and misleading jury instructions which failed to articulate clearly that malice and intent to damage or destroy property are essential elements of vandalism and malicious mischief. We disagree.

Here, instruction 21 provided that, as used in an insurance policy, "malicious mischief" means the willful or malicious physical injury to or destruction of insured property.

Instruction 22 provided that:

> Vandalism within a dwelling policy means the wilful and malicious destruction of property generally, and the destruction must have been intentional or in such reckless and wanton disregard of the rights of others as to be the equivalent of intent, and malice may be inferred from the act of destruction.

Instruction 23 provided that:

> Malice does not necessarily mean hatred. It may be inferred from unjustifiable conduct. In a legal sense, it means a wrongful act, done intentionally, without just cause or excuse.

The trial court found, and we agree, that CFB stipulated to instruction 21. However, CFB contends these instructions improperly focused on the act perpetrated and permitted the jury to infer malice from the act and, therefore, failed to articulate clearly the requirement of an intent to do a harmful or wrongful act. It further asserts that malice may only be inferred from the act when the identity of a vandal is unknown but not in a situation such as that presented here in which the identities of the vandals were known.

The scope of the terms "malice" and "vandalism" in the context of an insurance policy has not been defined by our appellate courts. However, other states interpreting "vandalism" and "malicious mischief" terms in property insurance policies have held overwhelmingly that these terms include a requirement of malice and that malice may be inferred from the act itself. *See Jennings v. Farmers Mutual Insurance Ass'n,* 260 Iowa 279, 149 N.W.2d 298 (1967); *State Automobile Mutual Insurance Co. v. Trautwein,* 414 S.W.2d 587 (Ky.1967); *Ditloff v. State Farm Fire & Casualty Co.,* 225 Neb. 375, 406 N.W.2d 101 (1987); *King v. North River Insurance Co.,* 278 S.C. 411, 297 S.E.2d 637 (1982); *but see Imperial Casualty & Indemnity Co. v. Terry,* 451 S.W.2d 303 (Tex.App.1970).

We think the interpretation of the majority of states is sound. As the *King* court concluded: "[T]o hold otherwise would in many instances defeat the purpose of insuring against vandalism, as vandals rarely destroy property in the open view of witnesses." *King v. North River Insurance Co., supra,* 297 S.E.2d at 638. Thus, we hold that intent to damage property can be presumed from circumstantial evidence of a deliberate act which ordinarily would cause such damage. *Louisville & Jefferson County Metropolitan Sewer District v. Travelers Insurance Co.* 753 F.2d 533 (6th Cir.1985).

Further, in our view, whether malice may be inferred from the act does not depend on whether the vandals are known or available to testify. Other courts have applied this rule in circumstances in which the identity of the vandals was known. *See Louisville & Jefferson County Metropolitan Sewer Dis-*

*trict v. Travelers Insurance Co., supra; Livaditis v. American Casualty Co.,* 117 Ga. App. 297, 160 S.E.2d 449 (1968); *Romanych v. Liverpool & London & Globe Insurance Co.,* 8 Misc.2d 269, 167 N.Y.S.2d 398 (N.Y.Sup.Ct.1957).

Accordingly, we conclude that the trial court did not err in instructing the jury that malice may be inferred from the harmful act and that the court articulated clearly the requirement of intent.

### III. Damages for Bad Faith Breach of Insurance Contract

■ CFB next contends that the trial court erred in allowing the jury to award damages for breach of contract even though Herod's claim for breach of contract had been dismissed as time-barred. Again, we disagree.

■ An insured suing under the tort of bad faith breach of an insurance contract is entitled to recover damages based upon traditional tort principles of compensation for injuries actually suffered, including emotional distress. *Ballow v. PHICO Insurance Co.,* 878 P.2d 672 (Colo.1994).

Following *CJI–Civ.3d* 25:6 (1989), the jury was instructed that it was to award Herod an amount which would reasonably compensate him for actual damages caused by the bad faith breach and, in determining such damages, it was to consider any economic losses including the amount he should have received under the policy.

CFB argues that this instruction caused the jury to award damages based upon the original loss suffered by Herod, i.e., the insurance contract benefit, instead of only those losses caused by CFB's bad faith. However, merely because the damages for bad faith breach may have been the same as those for breach of contract does not mean that the jury's award was improper.

Here, the jury was clearly instructed that it should award damages caused by the bad faith breach. Herod was not permitted to request contractual damages or attorney fees under the dismissed breach of contract claim nor was the jury instructed on such a claim.

He instead claimed damages sufficient to compensate losses sustained as a result of CFB's refusal to pay benefits and which would not have been incurred but for the bad faith breach. The jury awarded only economic losses directly resulting from CFB's bad faith, together with noneconomic damages and exemplary damages.

Thus, we conclude that the trial court's instructions on damages were not erroneous.

## IV. Unanswered Questions on Special Verdict Form

■ CFB next contends that the trial court erred in entering judgment against it because the jury did not answer certain questions on its special verdict form. We disagree.

An issue should be timely brought to the attention of the trial court for a ruling before it can be claimed as error on appeal. *Minto v. Lambert*, 870 P.2d 572 (Colo.App.1993).

Here, the court received the special verdict form from the jury and read the answers provided by the jury in open court. Despite the fact that the court did not mention questions two through seven, CFB concedes that it did not object to the manner in which the verdict had been completed until several days after trial.

Thus, we conclude that CFB did not timely raise its objection, and therefore, the trial court did not err in entering judgment against CFB.

## V. Prejudgment Interest

■ On cross-appeal, Herod contends that the trial court erred in failing to award him prejudgment interest on his compensatory damages. We agree.

The right to prejudgment interest, independent of an agreement to pay it, is statutory. *South Park Aggregates v. Northwestern National Insurance Co.*, 847 P.2d 218 (Colo. App.1992).

As to the award of damages for bad faith breach, § 5–12–102(1), C.R.S. (1992 Repl.Vol. 2) provides in pertinent part that:

(a) When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of the wrongful withholding to the date of payment ...

■ When an insurer improperly denies a claim, prejudgment interest is permitted on the amount of compensatory damages reflecting the benefit that the insured would have realized under the insurance contract, from the time of the wrongful withholding. *South Park Aggregates v. Northwestern National Insurance Co., supra.*

Here, the jury determined that Herod incurred $17,000 in economic losses resulting from CFB's bad faith breach of the insurance contract relating to damages to the house. This amount equalled the benefit realized by CFB's wrongful withholding of Herod's insurance benefits. Thus, pursuant to § 5–12–102(1), Herod is entitled to prejudgment interest on this amount.

■ As to the award for emotional distress, § 13–21–101(1), C.R.S. (1996 Cum. Supp.) provides for prejudgment interest on damages for personal injuries. An injury is personal when it impairs the well-being or the mental or physical health of the victim. In contrast, an injury is not personal when inflicted on property. *McCafferty v. Musat*, 817 P.2d 1039 (Colo.App.1990).

Here, the jury awarded Herod $6,000 as damages for emotional distress. Since these damages were for a personal injury, he is entitled to prejudgment interest on this amount pursuant to § 13–21–101(1). *Cf. Allabashi v. Lincoln National Sales Corp.*, 824 P.2d 1 (Colo.App.1991) (denying prejudgment interest under § 5–12–102 on award of emotional distress damages for willful and wanton breach of employment contract).

Thus, we conclude that the trial court erred in refusing to award prejudgment interest on Herod's compensatory damages.

The judgment is affirmed in all respects except as to the denial of prejudgment interest on compensatory damages. That portion of the judgment is reversed, and the cause is remanded for a determination of prejudg-

ment interest consistent with the views expressed in this opinion.

MARQUEZ and RULAND, JJ., concur.